# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCOTT ERIC LUELLEN, | ) |
|                Plaintiff, | ) Civil Action No. 2:12-cv-496 ) ) Judge Mark R. Hornak |
| v. | ) ) |
| RUSSELL WILSON LUELLEN, JR., | ) ) |
|                Defendant. | ) |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

On May 31, 2012 Plaintiff Scott Luellen, a prisoner at FCI-Morgantown, West Virginia, filed a Complaint against his biological father, Russell Luellen, Jr., for purportedly taking, spending, and intentionally keeping from Plaintiff his share of an inheritance in 1992. Compl.; ECF No. 3. Plaintiff now seeks to recover what he claims was due to him and alleges five state tort claims sounding in fraud and misrepresentation against Defendant, invoking this Court's jurisdiction under 28 U.S.C. § 1332. Defendant then filed a Motion to Dismiss for Lack of Jurisdiction.[1] ECF No. 14. Plaintiff later filed a Motion for Preliminary Injunction in order to enjoin Defendant from spending, transferring, or encumbering $18,064.34 in cash and assets, Plaintiff's purported share of the inheritance. ECF No. 19.

---

[1] Defendant filed a Motion to Dismiss for Lack of Jurisdiction, but his brief in support of his Motion cites Federal Rule of Civil Procedure 12(b)(6) and sets out the standard for a motion to dismiss for failure to state a claim. ECF No. 15 at 2, 4. Defendant argues, however, that the requirements of diversity jurisdiction, 28 U.S.C. § 1332, are not properly met in this case and therefore this Court lacks subject matter jurisdiction. That motion arises under Federal Rule of Civil Procedure 12(b)(1). Because the Court, as discussed below, has a continuing duty to ensure that it has subject matter jurisdiction and that the plaintiff has stated a claim on which relief may be granted, the Court will consider both issues.

## I. BACKGROUND

In his Complaint, the Plaintiff alleges the following facts. Plaintiff's biological mother and father are Nancy and Russell Luellen, who were spouses in 1992 up through 1996. Compl. ¶¶ 11-13. On January 1, 1992, Helen Robert Clark passed away and left the balance of her estate to Nancy and her then-husband Russell, along with their children, in her will.[2] *Id.* ¶¶ 13-15. Russell, who is the Defendant in this action, was present when the will was found, read, and participated in discussions regarding the beneficiaries. *Id.* ¶¶ 17-19. Thus, Defendant knew that three-fifths of the inheritance from Ms. Clark's estate belonged, in equal parts, to his three sons – Scott (Plaintiff), John, and Mark Luellen. *Id.* ¶ 20. However, January of 1992, Defendant called both Plaintiff and John and told them that Ms. Clark had passed away, that Defendant and Nancy were the estate's sole beneficiaries, and that Plaintiff and John were not beneficiaries. *Id.* ¶¶ 21-24.

As the executrix, Nancy received a check for $90,321.70 after the final accounting of the estate had been completed. *Id.* ¶¶ 25-28. This amount represented the distribution to the five beneficiaries of $18,064.34 each. *Id.* Nancy deposited this check into a bank account that was held jointly with Defendant. *Id.* ¶ 29.

Defendant then physically intimidated and coerced Nancy to cede control of the $90,321.70 to him even though he knew portions of the inheritance rightfully belonged to Plaintiff and three others. *Id.* ¶¶ 31-32, 39-41. Because Defendant had allegedly repeatedly physically assaulted Nancy from 1970 to 1992, she feared for her safety and gave up control of the funds. *Id.* ¶ 32. Defendant then proceeded to spend the inheritance, knowing that he was

---

[2] In Ms. Clark's will, the family name is spelled Llewellen rather than Luellen. The Court will use the spelling listed in the Complaint -- Luellen.

2

spending property belonging to Plaintiff. *Id.* ¶¶ 43-45. Defendant concealed his possession of Plaintiff's property from 1992 through the date of the filing of this Complaint. *Id.* ¶ 46.

Plaintiff filed this Complaint in May 2012. Compl.; ECF No. 3. Defendant then filed a Motion to Dismiss and a brief in support of the Motion in October 2012. ECF Nos. 14, 15. Plaintiff filed a Response and an Amended Response, ECF Nos. 17, 25, and Defendant filed an Amended Brief in support of his Motion. ECF No. 34.

Plaintiff also filed a Motion for Preliminary Injunction in order to enjoin Defendant from spending, transferring, or encumbering $18,064.34 in cash and assets. ECF Nos. 19, 20. Defendant filed a Response to this Motion, ECF Nos. 31, 32, and Plaintiff filed a Reply. ECF No. 36.

## II. SUBJECT MATTER JURISDICTION

A federal court's jurisdiction to hear cases in diversity arises under 28 U.S.C. § 1332(a), which provides that district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."[3] In his Complaint, Plaintiff pleads that this Court has diversity jurisdiction under 28 U.S.C. § 1332(a). Compl. ¶ 4.

### A. Amount in Controversy

Defendant, in his Motion to Dismiss, argues that the amount in controversy requirement is not properly met because prejudgment interest is not to be included in calculating the amount in controversy and that Plaintiff's request for punitive damages was unreasonable, arbitrary, and made in bad faith. ECF No. 14.

---

[3] A federal court has a "continuing obligation to assess its subject matter jurisdiction, [therefore it] can dismiss a suit *sua sponte* for lack of subject matter jurisdiction at any stage in the proceeding." *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010).

Whether the claims as alleged satisfy the amount in controversy requirement is determined from the face of the complaint. *Spectacor Mgmt. Grp. v. Brown*, 131 F.3d 120, 122 (3d Cir. 1997). The Supreme Court has articulated the standard as follows: "the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Huber v. Taylor*, 532 F.3d 237, 243 (3d Cir. 2008).

The Third Circuit has instructed that "whether the claims are for less than the jurisdictional amount depends on what damages a plaintiff could conceivably recover under state law." *Onyiuke v. Cheap Tickets, Inc.*, 435 Fed. App'x 137, 139 (3d Cir. 2011) (internal quotation marks omitted). Punitive damages are properly considered in determining the amount in controversy, but if the claim is "patently frivolous and without foundation because such damages are unavailable as a matter of law" it must be stricken from the calculation. *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993). Moreover, "when it appears that such a claim comprises the bulk of the amount in controversy and may have been colorably asserted solely or primarily for the purpose of conferring jurisdiction, that claim should be given particularly close scrutiny." *Id.*

Pennsylvania has adopted § 908(2) of the Restatement (Second) of Torts, which provides that "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Moran for & on Behalf of Estate of Moran v. G. & W.H. Corson, Inc.*, 586 A.2d 416, 422 (Pa. Super. Ct. 1991) (quoting Restatement (Second) of Torts § 908(2)). In the case of fraud, "[t]he rule . . . is that for punitive damages to be awarded there must be acts of malice, vindictiveness and a wholly

4

wanton disregard of the rights of others." *Smith v. Renaut,* 564 A.2d 188, 193 (Pa. Super. Ct. 1989). However, "though this rule seems to require the plaintiff to meet an additional burden, it is difficult to picture a fact pattern which would support a finding of intentional fraud without providing proof of 'outrageous conduct' to support an award of punitive damages." *Delahanty v. First Pa. Bank, N.A.,* 464 A.2d 1243, 1263 (Pa. Super. Ct. 1983).

While "there are no rigid benchmarks that a punitive damages award may not surpass," the Supreme Court has held that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process . . . an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 425 (2003). While the Supreme Court in *Exxon Shipping Co. v. Baker,* 554 U.S. 471 (2008), held that a punitive damages award may not exceed a 1:1 ratio, this was in the context of maritime law and not constitutional due process. *See Jurinko v. Med. Protective Co.,* 305 F. App'x 13, 15 (3d Cir. 2008); *In re Bayside Prison Litig.,* 331 F. App'x 987, 993 (3d Cir. 2009). Further, it appears that if *Baker* is to be extended beyond maritime law, it would only be in those cases in which the compensatory award is substantial, at least more substantial than $18,064.34. *See Jurinko,* 305 F. App'x at 28.

Plaintiff seeks punitive damages in connection with all of his claims, which include fraud, fraudulent misrepresentation, negligent misrepresentation, conversion, and unjust enrichment. Compl. ¶¶ 60, 76, 89, 101, 110. Plaintiff, in his Complaint, alleges that Defendant knew that Plaintiff was legally entitled to a share of an inheritance under the Estate of Helen Clark, but that Defendant used physical intimidation and coercion to gain control of the entire inheritance. *Id.* ¶¶ 17-20, 31. Defendant then allegedly intentionally lied to Plaintiff about the

inheritance and concealed his possession of it so that Defendant could keep and spend it for himself. *Id.* ¶¶ 21-22, 40, 43-44, 46. The Court cannot conclude that Plaintiff's claim for punitive damages based upon Defendant's alleged intentional fraud is so frivolous that it should not be aggregated with his other damages claims to determine the amount in controversy.

Moreover, Plaintiff seeks compensatory damages of $18,064.34 in principal from the inheritance and $21,777.20 in prejudgment interest. *Id.* Even assuming that prejudgment interest is not included in calculating the amount in controversy, in order to satisfy the jurisdictional requirement the resulting punitive-to-compensatory damages ratio is 3.152:1,[4] a ratio facially within Constitutional limits.

Finally, Defendant argues that Plaintiff's claimed punitive damages amount was asserted in bad faith, as evidenced by the Plaintiff originally filing this case in the Butler County Court of Common Pleas, failing to remove it to federal court, filing a "Notice of Non-Suit," and then re-filing the case in federal court. ECF No. 15 at 6-7. The Court fails to see how this procedurally deficient litigation strategy evinces bad faith, particularly when done by a *pro se* plaintiff. Moreover, Plaintiff sought the same amount in damages in his complaint filed in the Court of Common Pleas as he does here. ECF No. 14-2.

The Court is unable to say, with legal certainty, that Plaintiff makes a claim for an amount that is necessarily less than the jurisdictional amount of 28 U.S.C. § 1332(a). Thus, the Defendant's Motion to Dismiss for failure to sufficiently meet the jurisdictional amount requirement is denied.[5]

---

[4] This would include $18,064.34 in compensatory damages and $56,936.66 in punitive damages, for a total of $75,001.

[5] Because the Court concludes that the jurisdictional amount required for diversity jurisdiction is satisfied without including the prejudgment interest in calculating the amount in controversy, the Court need not address that issue.

### B. *Diversity of Citizenship*

Complete diversity requires that plaintiff be a citizen of a different state than defendant. *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010). "Whether diversity jurisdiction exists is determined by examining the citizenship of the parties at the time the complaint was filed." *Midlantic Nat'l Bank v. Hansen*, 48 F.3d 693, 696 (3d Cir. 1995).

It is well-settled that, for purposes of diversity jurisdiction, citizenship means domicile, not residence. *See Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972). A prisoner's citizenship is determined by his state of domicile immediately before being incarcerated. *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010); *McCracken v. Murphy*, 129 F. App'x 701, 702 (3d Cir. 2005).

In his Complaint, Plaintiff asserts that Defendant resides in Pennsylvania and that he himself has been a "citizen of the District of Columbia, Virginia and Massachusetts" since 1992. *Id.* at ¶¶ 2-3. Such an allegation is not legally sufficient. On the face of his Complaint it is evident that Plaintiff currently resides in federal prison in West Virginia; however he fails to plead which state he was a citizen of (e.g. domiciled) immediately prior to incarceration. Thus, Plaintiff's Complaint is deficient on its face to establish complete diversity and therefore is dismissed without prejudice, with leave to amend to make the requisite citizenship showing, subject to the good faith pleading obligations of Fed. R. Civ. P. 11.

### III. FAILURE TO STATE A CLAIM

Under 28 U.S.C. § 1915(e)(2), when a plaintiff (such as Plaintiff) proceeds *in forma pauperis,* "the court shall dismiss the case at any time" if it determines that certain conditions are met, including that the plaintiff "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). Section 1915 obligates this Court to independently examine all *in forma*

7

*pauperis* cases, and does so by applying the same standard as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).[6] *Sowemimo v. Thomas*, No. 09-639, 2009 WL 3806737, at *2 (W.D. Pa. Nov. 13, 2009) ("In performing a court's mandated function of *sua sponte* reviewing complaints under 28 U.S.C. § 1915(e) to determine if they fail to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).").

> In reviewing complaints as mandated by 28 U.S.C. § 1915(e) and, consequently, utilizing the standards for a 12(b)(6) motion to dismiss, the complaint must be read in the light most favorable to the Plaintiff and all well-pleaded, material allegations of fact in the complaint must be taken as true. . . . However, the court need not accept as true any legal averments or conclusions contained in the complaint. . . . Neither does the court have to accept as true any allegations of fact in the complaint which contradicts facts of which the court may take judicial notice. . . . Furthermore, because Plaintiff is *pro se*, courts accord an even more liberal reading of the complaint, employing less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney.

*Id.* at 3-4 (citations omitted).

On the face of Plaintiff's Complaint, his claims are facially barred by the Pennsylvania two (2) year statute of limitations for fraud and misrepresentation, as the events as pled giving rise to the causes of actions arose in 1992. 42 Pa. Cons. Stat. Ann. § 5524 (West 2012); *see* Compl. ¶¶ 17-31.[7] To get around this, Plaintiff argues that that statute of limitations should be

---

[6] 28 U.S.C. § 1915(e) provides:
    (e)(1) The court may request an attorney to represent any person unable to afford counsel.
    (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
    (A) the allegation of poverty is untrue; or
    (B) the action or appeal--
    (i) is frivolous or malicious;
    (ii) fails to state a claim on which relief may be granted; or
    (iii) seeks monetary relief against a defendant who is immune from such relief.

[7] In this Circuit, it is appropriate to consider the impact of the statute of limitations at the Fed. R. Civ. P. 12(b)(6) stage when the pleading on its face shows that it would be time-barred, under what is commonly known as the "Third Circuit Rule." *See Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002).

tolled under the "discovery rule" and "doctrine of fraudulent concealment" until the date in which he actually discovered the fraud (he says 2011). Compl. ¶¶ 6-10.

Under Pennsylvania law, the discovery rule is an exception to the statute of limitations and it "delays the running of the statute until the plaintiff knew, or through the exercise of reasonable diligence should have known, of the injury and its cause." *Beauty Time, Inc. v. VU Skin Sys., Inc.*, 118 F.3d 140, 144 (3d Cir. 1997) (quoting *Urland v. Merrell-Dow Pharms.*, 822 F.2d 1268, 1271 (3d Cir.1987)) (quotation marks omitted). When "the underlying events being sued upon . . . sound inherently in fraud or deceit . . . that, without more, will toll the statute of limitations until such time as the fraud has been revealed, or should have been revealed by the exercise of due diligence by the plaintiff." *Id.* "Regardless of the grounds for seeking to toll the statute, the plaintiff is expected to exercise reasonable diligence in attempting to ascertain the cause of any injury." *Id.*

The doctrine of fraudulent concealment also tolls the statute of limitations and "provides that a defendant may not invoke the statute of limitations if, through fraud or concealment, he caused the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts." *Drelles v. Mfrs. Life Ins. Co.*, 881 A.2d 822, 832 n.6 (Pa. Super. Ct. 2005). Like the discovery rule, the standard of reasonable diligence applies equally to the doctrine of fraudulent concealment so "a statute of limitations that is tolled by virtue of fraudulent concealment begins to run when the injured party knows or reasonably should know of his injury and its cause." *Fine v. Checcio*, 870 A.2d 850, 861 (Pa. 2005).

However, Plaintiff's assertions in these regards are wholly conclusory and fail to plead any facts that would allow for the discovery rule or the doctrine of fraudulent concealment to apply. Instead, at paragraphs six (6) through ten (10) of his Complaint, he simply sets forth only

9

legal conclusions regarding these doctrines. Plaintiff fails to allege *facts* sufficient to *show* that he did not, and *could not*, have discovered the alleged fraud any earlier than the date he alleges, (or, at least two (2) years prior to filing this suit) and how he exercised reasonable diligence in attempting to uncover the fraud, or even the actions actually taken by Defendant in the intervening twenty (20) years that would factually support his assertion that either of those tolling doctrines would apply. This is particularly so in that the probate and distribution of the Estate of Helen Clark was a matter of public record and advertised in The Ridgway Record. ECF No. 3-2. Plaintiff's Complaint is insufficient to meet the *Twiqbal*[8] bar and is therefore dismissed without prejudice.[9]

IV. CONCLUSION

For the foregoing reasons, Plaintiff's Complaint is dismissed without prejudice for lack of subject matter jurisdiction and for a failure to state a claim. Plaintiff shall have thirty (30) days to amend his Complaint to sufficiently allege federal jurisdiction and to set forth a sufficient factual basis to show that it is plausible that his claims for relief based on events occurring twenty (20) years before filing are not time-barred.

---

[8] *Twiqbal* refers to the *Twombly/Iqbal* standard. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[9] Because Plaintiff's Complaint is dismissed in its entirety, Plaintiff's Motion for a Preliminary Injunction to Preserve Assets, ECF No. 19, is properly denied as moot. In any event, that Motion falls short of setting forth the basis for such extraordinary relief, in that it fails to demonstrate that the preliminary injunction is the "only way of protecting the plaintiff from harm." *Emile v. Sci-Pittsburgh*, No. 04-974, 2006 WL 2773261, at *6 (W.D. Pa. Sept. 24, 2006) (quoting *Campbell Soup Co. v. ConAgra, Inc.*, 977 F .2d 86, 91 (3d Cir.1992)). The Third Circuit has held that "[f]our factors govern a district court's decision whether to issue a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief, (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." *Gerardi v. Pelullo*, 16 F.3d 1363, 1373 (3d Cir. 1994) (*quoting SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244, 1254 (3d Cir. 1985)); *see also Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 170–71 (3d Cir. 2001). Plaintiff fails to meet his burden in pleading facts that would show that these factors would weigh in favor of a preliminary injunction.

An appropriate order will issue.

/s/ Mark R. Hornak
Mark R. Hornak
United States District Judge

Dated: March 21, 2013

cc: All counsel of record
    Scott Eric Luellen, *pro se*