IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCOTT ERIC LUELLEN, | ) |
| | ) Civil Action No. 2:12-cv-496 |
| Plaintiff, | ) |
| | ) Judge Mark R. Hornak |
| v. | ) |
| | ) |
| RUSSELL WILSON LUELLEN, JR., | ) |
| | ) |
| Defendant. | ) |

## OPINION
## (AMENDED)*

**Mark R. Hornak, United States District Judge**

In this action, Plaintiff Scott Luellen brings suit against his estranged biological father, Russell Luellen, Jr., for purportedly taking and spending, back in 1992, Plaintiff's share of an inheritance from an estate for which Plaintiff's biological mother was the sole executrix. Am. Compl., ECF No. 52. Plaintiff seeks to recover what he claims was due to him, $18,064.34 in inheritance along with interest and punitive damages.[1] He alleges five (5) Pennsylvania state law tort claims sounding generally in fraud, conversion and misrepresentation against Defendant, invoking this Court's jurisdiction under 28 U.S.C. § 1332. Defendant has filed a Motion to Dismiss the Amended Complaint on a variety of grounds. ECF No. 56. For the reasons which follow, the Court will grant that Motion on the basis that this Court lacks subject matter jurisdiction to adjudicate these claims.

---

* The Opinion is amended to reflect in its Conclusion the correct identity of the party moving to dismiss this action.

[1] He pleads that this now totals $112,098.90. ECF No. 52 at 18.

I. BACKGROUND

In his Amended Complaint, the Plaintiff alleges the following facts which the Court will treat as true for purposes of considering the pending Motion to Dismiss.[2] Plaintiff's biological mother and father are Nancy and Russell Luellen, who were spouses in 1992 up through 1996. Am. Compl. ¶¶ 35-37. On January 1, 1992, Helen Robert Clark passed away, testate, and her will ("Will") seemingly provided in its residuary clause that much of her estate was to go to Nancy and her then-husband Russell, along with their children (one of whom is Plaintiff).[3] *Id.* ¶¶ 38-40. Russell, who is the *only* Defendant in this action, was present when Clark's Will was found and read, and he participated in "discussions" regarding the beneficiaries. *Id.* ¶¶ 41-43. Thus, Defendant supposedly knew that one-fifth of the residuary inheritance from Ms. Clark's estate ("Estate") was to go to the Plaintiff. *Id.* ¶ 43. However, in January of 1992, Defendant called Plaintiff and told him that Ms. Clark had passed away, that Defendant and Nancy Luellen were the Estate's sole beneficiaries, and that Plaintiff was not a beneficiary. *Id.* ¶¶ 44-45.

Plaintiff says that because he resided over 300 miles away in Northern Virginia,[4] he was unaware of the notice of the Will and its probate in state court (the Orphans' Court Division of

---

[2] That does not mean that Plaintiff's allegations, particularly those of allegedly improper conduct by the Defendant, are true, but only that they will be treated as such. Nor does this Court's dismissal of this action on jurisdictional grounds indicate that Plaintiff's factual assertions are not credible. Defendant may, or may not, have committed the bad acts that Plaintiff claims that he did, but this Court concludes that it is not the proper forum for the resolution of those issues.

[3] In Ms. Clark's Will, the family name is spelled Llewellen rather than Luellen. The Court will use the spelling listed in the Amended Complaint -- Luellen. The Will also contains several portions which were "x'd" out (without demonstrating who crossed out those distribution clauses) which made specific devises of personalty and to create an animal shelter in Elk County. The Will is neither witnessed nor acknowledged. ECF No. 52-1.

[4] Plaintiff apparently ran one or more businesses in Northern Virginia, and is seemingly familiar with the ins and outs of federal litigation. *U.S. v. Scott E. Luellen*, No. 1:08-cr-102 -LO-1( E.D.Va.); *see also, Luellen v. U.S.*, No. 08-cr-102 (LO)/09-cv-681, 2011 WL 4565348 (E.D. Va. Sept. 28, 2011) (denying relief under 28 U.S.C. § 2255), *appeal dismissed*, 470 F. App'x 151 (4th Cir. 2012); *writs denied*, 463 F. App'x 177, 178 (4th Cir. 2012); *cert. denied*, 133 S.Ct. 550 (2012), *rehng. denied*, 133 S.Ct. 925 (U.S. 2013); *see Luellen v. Gulick, et al.*, 1:10-cv-203 (N.D.W.V.); *see also* 2012 WL 1029577 (March 26, 2012); 2011 WL 7628537 (July 5, 2011); 2011 WL 2565268 (June 28, 2011); and 2011 WL 2259120 (June 8, 2011) (same).

the Court of Common Pleas for Elk County, Pennsylvania), which notice was published in the local newspaper, The Ridgway (Pa.) Record. *Id.* ¶¶ 13-14. Moreover, according to the Plaintiff, that notice only asked creditors to come forward and did not provide information regarding the heirs of Ms. Clark's Estate. *Id.* ¶¶ 15-16.[5]

As the executrix, Nancy Luellen received a single check for the Estate proceeds in the amount of $90,321.70 after the final accounting of the Estate had been completed and approved by the Orphans' Court in Elk County, Pennsylvania. *Id.* ¶ 51. This amount allegedly contained the distribution that was due to five beneficiaries, which amounted to $18,064.34 each. *Id.* ¶¶ 50, 53. She deposited this entire check into a personal bank account that she held jointly with the Defendant. *Id.* ¶ 52.[6]

According to Plaintiff, Defendant supposedly then physically intimidated and coerced Nancy Luellen in order to make her cede total control of the $90,321.70 to Defendant, even though he knew portions of the inheritance rightfully belonged to Plaintiff. *Id.* ¶¶ 54-59.[7] Because Defendant had allegedly repeatedly physically assaulted her from 1970 to 1992, she supposedly feared for her safety and therefore gave up control of the funds, presumably by not swiftly disbursing the funds from her personal, jointly-held account to the Plaintiff, before

---

[5] That notice, which is attached to the Plaintiff's Amended Complaint, is not at all so limited in scope, and in fact advises the world that at a date and time certain, the Clark Will and Estate, and the distribution under them, would be confirmed (or not) by the Orphans' Court in Elk County, Pennsylvania. ECF No. 52-2.

[6] Notably, Plaintiff does not aver that her making this deposit was directed or coerced by the Defendant. By any measure, this one act by Nancy Luellen was the event which got the ball rolling and gave rise to all of the issues that underlie this case. Had she and her lawyer followed the tried and true approach of opening and using a bank account specific to her duties as executrix, one so limited in its access and use, none of the disagreements that are at the core of this dispute would have likely arisen.

[7] Plaintiff alleges that Defendant repeatedly assaulted his mother from 1970 through 1992. Am. Compl. ¶ 55. Plaintiff refers to Defendant's current wife as "his mistress," *id.* at ¶ 29, and points out that Defendant denied Plaintiff financial assistance for college. *Id.* ¶ 30. Plaintiff also makes clear that come what may, he will not sue Nancy Luellen for a breach of any duty. *See* ECF No. 85 at 4 ("Plaintiff intends to make no claims against the Executrix, Nancy Luellen.").

Defendant could get his hands on them. *Id.* ¶¶ 54-58.[8] Defendant then proceeded to spend Plaintiff's inheritance, knowing that he was spending property belonging to Plaintiff. *Id.* ¶¶ 61-62. Defendant then "actively concealed" his possession and depletion of Plaintiff's property from 1992 through February 2011, which included allegedly his intimidating Nancy Luellen to keep silent. *Id.* ¶¶ 17, 19, 23, 32, 46-47.

Then, in January 2011, Nancy Luellen supposedly informed Plaintiff that he *had* been an heir to the Clark Estate and that Defendant had taken all of the money from the Estate distribution. *Id.* ¶ 24. Plaintiff says that he only then requested the public records for Ms. Clark's Estate from the Orphans' Court of Elk County (something he could have done back in 1992) and he received records of the Will and the Estate's final accounting from that court in February 2011. *Id.* ¶¶ 25-26. Plaintiff ultimately filed this action in this Court on April 16, 2012. ECF No. 1.[9]

Plaintiff filed his Amended Complaint in April 2013,[10] in which he brings claims for fraud, fraudulent misrepresentation, negligent misrepresentation, conversion, and unjust enrichment against only the Defendant. Am. Compl. ¶¶ 63-123. Conspicuously missing are any

---

[8] Plaintiff's First Amended Complaint does not reveal why it was he took Defendant at his word when Defendant supposedly told Plaintiff in 1992 that only Defendant and Nancy Luellen were beneficiaries under the Will, given Plaintiff's expansive allegations of Defendant's intimidation of Nancy Luellen, going back decades and of which Plaintiff pleads he was well aware. Further, Plaintiff does not plead why it was he did not do in 1992 that which he did in 2011 – obtain the probate court records regarding the Will and the Estate, given his suspicions of Defendant's actions and his stated awareness of the nature of the stormy relationship between Defendant and Nancy Luellen.

[9] Plaintiff apparently filed this very same lawsuit first in the Court of Common Pleas of Butler County, Pennsylvania on February 1, 2012, at its docket number 12-10118. He then, as plaintiff, purported to remove that case to this Court on March 14, 2012, at our docket number 12-311. The Defendant moved to remand it on the basis that removal is not available to plaintiffs, and Plaintiff thereafter purported to withdraw his Notice of Removal, ECF No. 4 at 12-311. By Order dated April 11, 2012, United States Magistrate Judge Maureen Kelly granted the Motion to Remand. ECF No. 5 at 12-311. The docket in that state court proceeding continued to show activity until October 11, 2012, when that court entered an Order directing its Prothonotary to mark this matter "discontinued and ended."

[10] His original Complaint in this civil action was dismissed due to incomplete and flawed jurisdictional allegations. ECF No. 46.

4

claims against Nancy Luellen, the executrix who received the Estate proceeds pursuant to the Orphan's Court decree and then commingled them with her own (and her husband's) funds.

Defendant then filed a Motion to Dismiss Plaintiff's Amended Complaint along with a brief in support of that Motion. ECF Nos. 56, 57. Plaintiff filed a Response and multiple Amended Responses. ECF Nos. 66, 75, 85, 86. The Court has carefully considered each party's briefs, and the issue is now ripe for disposition. For the following reasons, the Motion to Dismiss is GRANTED, without prejudice to the Plaintiff's ability to refile this action in, or transfer it to, the appropriate Pennsylvania Court of Common Pleas.

## II. LEGAL STANDARD

### A. Pro Se Litigants

*Pro se* pleadings, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Brown v. City of Long Branch*, 380 F. App'x 235, 238 (3d Cir. 2010) ("*Pro se* complaints, however, must be 'liberally construed' and 'held to less stringent standards than formal pleadings drafted by lawyers[.]'") (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Although the Court does not find Plaintiff's Amended Complaint to be "inartful," because Plaintiff is a *pro se* litigant (albeit, as the docket and his litigation history reveal, a sophisticated one), this Court will consider the Motion to Dismiss in that context.

### B. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss a case where there is a lack of subject matter jurisdiction. Once the issue is fairly raised, as it has been here, the plaintiff bears the burden of establishing subject matter jurisdiction. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

A challenge to subject matter jurisdiction under Rule 12(b)(1) may be "facial" or "factual." *Gould Elecs., Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000). A facial challenge concerns a deficiency with the pleading, and the court must accept the complaint's allegations as true. *See NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 & n.7 (3d Cir. 2001); *Mortensen*, 549 F.2d at 891. A factual challenge concerns the power of the court to hear the action. *Mortensen*, 549 F.2d at 891. While a court reviewing a facial challenge may consider only the complaint and its attachments, a court reviewing a factual challenge may consider external evidence. *See Gould*, 220 F.3d at 176; *Mortensen*, 549 F.2d at 891.

### C. Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The District Court must accept the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In short, a motion to dismiss should be granted if a party does not allege facts which could, if established at trial, entitle him to relief. *See Fowler*, 578 F.3d at 211.

### III. DISCUSSION

In his Motion to Dismiss, Defendant argues that this Court lacks subject matter jurisdiction as a consequence of the "probate exception" to its Article III power, that Plaintiff's claims are barred by the statute of limitations, that Plaintiff failed to properly join a required party (Nancy Luellen) under Fed. R. Civ. P. 19, and that each Count of the Amended Complaint allegedly fails to state a claim upon which relief may be granted. ECF Nos. 56, 57. Because the

Court concludes that the probate exception deprives it of subject matter jurisdiction, it will grant the Motion to Dismiss on jurisdictional grounds.

The Supreme Court explained that the "probate exception" to federal jurisdiction is not "compelled by the text of the Constitution or federal statute," but is instead a "doctrine[ ] stemming in large measure from misty understandings of English legal history." *Marshall v. Marshall*, 547 U.S. 293, 300 (2006).

In applying this doctrine, the Court had previously held that:

> [F]ederal courts of equity have jurisdiction to entertain suits 'in favor of creditors, legatees and heirs' and other claimants against a decedent's estate 'to establish their claims' so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court.
>
> Similarly while a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court, it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court.

*Markham v. Allen*, 326 U.S. 490, 494 (1946) (citations and internal citations omitted).

In *Marshall*, the Supreme Court clarified that

> [w]e read *Markham's* enigmatic words . . . to proscribe "disturb[ing] or affect[ing] the possession of property in the custody of a state court." . . . In short, we comprehend the "interference" language in *Markham* as essentially a reiteration of the general principle that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*. Thus, the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

*Marshall*, 547 U.S. at 311-12 (citations omitted).

7

The Third Circuit has held that "[i]t is clear after *Marshall* that unless a federal court is endeavoring to (1) probate or annul a will, (2) administer a decedent's estate, or (3) assume *in rem* jurisdiction over property that is in the custody of the probate court, the probate exception does not apply." *Three Keys Ltd. v. SR Util. Holding Co.*, 540 F.3d 220, 227 (3d Cir. 2008).

In his Amended Complaint, Plaintiff alleges that he was entitled to a one-fifth share of Helen Clark's estate ("Estate") but that Defendant (the husband of the executrix) fraudulently and improperly took "that" money from a joint personal bank account of which he was an owner along with the sole executrix of the Estate (his wife and Plaintiff's mother), after it was distributed from the Estate for distribution by her to the residual beneficiaries.[11] Plaintiff attached to his Amended Complaint Ms. Clark's Will, the state court "Petition for Confirmation of First and Final Account and Approval of Proposed Schedule of Distribution" ("Petition") filed by Nancy Luellen in her role as executrix, the state court Decree approving it, and the text of the legal notice of the Orphans' Court proceeding for approval of the distribution. ECF Nos. 52-1, 52-2.

At first blush, one could conclude that the Amended Complaint does not run up against the probate exception because it seeks *in personam* relief divorced from the administration of the Estate, given its focus on the alleged nefarious personal misconduct of the Defendant. It is not that simple. Our Court of Appeals has cautioned against making this determination based only upon the "surface" of the claims alleged. *Three Keys*, 540 F. 3d at 229-30. A closer examination of the claims asserted, and what would be involved in adjudicating them, reveals that they inherently implicate that exception to this Court's jurisdictional reach.

Ms. Clark's Will reads in relevant part: "The balance of the estate is to go to Nancy Llewellen [sic], and her husband, Russell Llewellen [sic], and their children." ECF No. 52-1.

---

[11] Although the Decree of distribution submitted by Plaintiff does not order that further distribution.

However, under "Proposed Distribution" in the Petition, the only recipient listed is Nancy Luellen. ECF No. 52-2 at 5. The Orphans' Court approved that distribution by its Decree. While based on the language of the Will's residuary clause, Plaintiff may have a colorable argument that he was an unnamed but specific beneficiary, the Petition as approved by the Orphans' Court does not indicate as much, nor does its Decree of distribution. Consequently, for this action to go forward, the Court would have to conclude that the Plaintiff was in fact a beneficiary of the Clark Estate in order to determine if the allegedly stolen money was in fact ever "his" to begin with.[12] Unless he was such a beneficiary, all of his claims fail, as he would have had no property rights that the Defendant would have interfered with.

Making that analysis is the first step into territory which the Supreme Court and Third Circuit has indicated would fall within the probate exception, because the Court would necessarily have to first determine Plaintiff's rights, if any, under the Will. *See Markham*, 326 U.S. at 494 ("a federal court has no jurisdiction to probate a will or administer an estate").[13] The situation might well be different if the Petition, and the Orphans' Court's approval of it, facially indicated that Plaintiff was in fact a one-fifth beneficiary. *Weisz v. Farmers & Merchants Trust Co.*, No. 11-3050, 2012 WL 645999, at *2 (E.D. Pa. Feb. 29, 2012) (probate exception did not apply where probate court approved monetary distribution to plaintiff, funds were distributed to plaintiff's attorney, and plaintiff sued the law firm for not giving him such distribution, because the action would "not affect previous or future decisions by the Probate Court . . . or alter any provision of Mr. Clementi's will."). In *Weisz*, the decree of distribution was to the plaintiff

---

[12] In the Defendant's brief he notes that "Defendant is not admitting that Plaintiff should have been a beneficiary under the Estate of Helen R. Clark or received any of the proceeds. That is a matter for the Court of Common Pleas of the 59th Judicial District (Elk County Branch) to decide." ECF No. 57 at 5 n.1.

[13] Such a determination, of course, does not in and of itself trigger the probate exception, *Three Keys*, 540 F.3d at 230, but as explained below, it is in this case the first step in a process that would embroil this Court in what are fundamentally Estate administration (or "re-administration") activities.

9

specifically, and his lawyer put the distributed money into his client trust account, which of course meant that he had a fiduciary duty to the plaintiff regarding those trust account assets. Neither is the situation here, and unlike the situation in *Weisz*, further litigation may well lead to this Court either rendering a decision that is contrary to the probate court's distribution decree, or interpreting what the probate court intended in its approval of the Petition, or in essence supervising how the Estate should have been administered. Any of those routes would walk the Court down the path of effectively re-probating and administering the Clark Will. Also, Plaintiff has advanced no facts, or legal support, for the conclusion that the Defendant had any general obligation to the Clark Estate or to its purported beneficiaries as to the funds at issue, as was the case with the client trust account in *Weisz*. To the contrary, case law suggests that at the moment Nancy Luellen deposited the entire distribution check into the joint account, those amounts became the joint property of the Defendant and Nancy Luellen. *See In re Paul H. Titus,* 467 B.R. 592, 608-09 (Bankr. W.D. Pa. 2012) (collecting Pennsylvania cases).

At the same time, Plaintiff has alleged plenty of facts to support the conclusion that the one person directly involved in all of these matters – his mother the executrix – did have a controlling obligation to the Estate, and to Plaintiff, that underlies all of his claims. Under Pennsylvania law, one aspect of the fiduciary duty of the executrix is to "take possession of, maintain and administer all the real and personal estate of the decedent . . . ." 20 Pa.C.S.A. § 3311. In other words, the executrix bears the responsibility to "preserve and protect the property for distribution to the proper persons within a reasonable time." *In re Estate of Campbell,* 692 A.2d 1098, 1101 (Pa. Super. Ct. 1997). In the performance of her fiduciary duties, an executrix must exercise the "judgment, skill, care and diligence that a reasonable or prudent person would ordinarily exercise in the management of his or her own affairs." *Id.* at 1101-02. Nancy Luellen,

not the Defendant, was the executrix of Clark Estate, and the state court records submitted by the Plaintiff reflect that she was represented in that role by counsel. If anything, Plaintiff has pled a facial violation of these executrix duties by Nancy Luellen, who decided to divert the proceeds of the Clark Estate to herself (and due to his joint ownership of the bank account, Defendant) by placing them in a joint bank account to which the Defendant had unfettered access, and then failing to timely distribute the funds to the supposed beneficiaries or to otherwise take the necessary steps to preserve those assets to what Plaintiff alleges were their sole lawful use.

Plaintiff argues that this case is similar to *Marshall*, 547 U.S. 293 (2006) and *Rothberg v. Rothberg*, No. 11-5497, 2013 WL 1314699 (D.N.J. March 28, 2013), in that there was tortious interference with the Will by the Defendant, and the case therefore falls outside of the probate exception. *See* ECF No. 86. Those cases held that notwithstanding the probate exception, a district court retains its jurisdiction to hear a claim where a plaintiff seeks an *in personam* judgment against a defendant because the defendant used tortious means to prevent the making of the *inter vivos* or testamentary gifts that the decedent had intended to provide to the beneficiary/plaintiff.[14] For instance, in *Marshall*, the plaintiff alleged that the defendant prevented the transfer of the decedent's intended gifts to her by imprisoning the decedent, preventing plaintiff from having personal contact with the decedent, and making misrepresentations and transferring property against the decedent's wishes prior to his death. *Marshall*, 547 U.S. at 308-12. In *Rothberg*, the plaintiff alleged that the defendants used unlawful means to cause the decedent to execute testamentary instruments which substantially

---

[14] The elements of such tortious interference are: "(1) the testator indicated an intent to change his or her will to provide a described benefit for the plaintiff; (2) the defendant used fraud, misrepresentation or undue influence to prevent the execution of the intended will; (3) the defendant successfully prevented that execution; and (4) but for the defendant's conduct, the testator would have changed the will." *McNeil v. Jordan*, 934 A.2d 739, 741 (Pa. Super. Ct. 2007).

11

decreased the share of the estate that the decedent had otherwise intended for the plaintiff. *Rothberg*, 2013 WL 1314699, at *9.

This is not those cases. Here, Plaintiff does not allege that Defendant frustrated or prevented Ms. Clark from making *inter vivos* gifts or incorporating her intentions into her Will when she drafted it. Instead, Plaintiff's claim is that he did not receive his appropriate share of the Estate because: (1) he had an entitlement to the distribution proceeds, notwithstanding that the state court Decree of distribution does not say that, and (2) Defendant took "Plaintiff's money" from an account to which the Defendant otherwise had lawful access, after the Estate had been administered and the executrix had elected to co-mingle Estate funds with those of her husband and herself in their joint, personal account.

The legal duty to properly distribute the remaining amount of the Clark Estate to its beneficiaries belonged to Nancy Luellen, not Defendant. Plaintiff has advanced no case law or other authority for the proposition that there was a pre-existing limitation on the Defendant's accessing funds in a bank account to which he otherwise had unlimited access.[15] Consequently, absent some legal constraint, Defendant had the lawful power to withdraw any or all of the money in the account, unless certain specific funds were earmarked as segregated for the benefit of the Plaintiff. Reduced to its core, in order to prevail, Plaintiff would essentially be asking this Court to impose a fiduciary duty on the Defendant, after the fact, and, in reality, to place a *post hoc* constructive trust on the specific deposited funds from the Estate allegedly "stolen" by

---

[15] Actual ownership of the funds in a joint bank account as between the parties to such an account appears to be governed by the provisions of Pennsylvania's Multiple Party Accounts Statute, 20 Pa. Con. Stat. Ann. §§6301-6306. By its terms, it does not appear to govern access to the funds in such an account, nor does it resolve ownership rights except as to the parties to such a multiple party account and claims made "through" them. 20 Pa. Cons. Stat. Ann. §6302. This statute also does not appear to abrogate Pennsylvania decisional law holding that upon the deposit of funds by one spouse to such an account, all of the funds in the account are presumed to be those of "them" and subject to otherwise unfettered access by either spouse. *See In re Paul H. Titus*, 467 B.R. at 608.

12

Defendant.[16] This would in effect "re-administer" the Estate by forcing a testamentary distribution to him via disgorgement from the now-fiduciary Defendant. Doing this would, of course, necessarily require this Court to interpret the Will to determine whether, in the first instance, Plaintiff was in fact a residuary beneficiary entitled to a distribution that is not listed on the face of the Orphan's Court Decree approving that distribution, to then determine a non-party executrix's (Nancy Luellen) compliance (or not) with her duties in administering the Will, and to then impose upon the Defendant a similar set of legal duties as to the administration of, and distribution from, the Estate. *See Thorpe v. Thorpe*, No. 10-1317, 2013 WL 1703572, at *7 (M.D. Pa. April 19, 2013) (estate administration involves ascertaining the nature, extent and total value of decedent's property and transferring it to the proper parties).

Further, after imposing such an after-the-fact constructive trust on the involved joint bank account, or a more generalized fiduciary duty on the Defendant, the Court would have to determine how much money was in the account, and when it was there, and would, in reality, thereby be taking *in rem* jurisdiction over Estate assets and other assets of the executrix. Plaintiff has pled no facts to demonstrate that from the time of distribution to today, Nancy Luellen did not have sufficient funds in the involved account (or elsewhere) to pay him the money he seeks notwithstanding any withdrawals by the Defendant of funds in the Defendant's account, which would be part and parcel of this Court's finding that it was Plaintiff's money that the Defendant withdrew and spent.[17]

---

[16] Plaintiff appears to concede that for his claims to succeed, such a trust must be imposed. ECF No. 66 at 2.

[17] As a general principle, "cash is cash." Thus, if there *were* sufficient other funds in the account, there would be no basis for holding that any money the Defendant withdrew from the joint account was actually or specifically the "Plaintiff's money," rather than the Defendant's, absent some form of a constructive trust over a segregated bundle of funds. Determining if specific funds belong to an estate is, of course, the function of the probate court. *Estate of Czarnecki v. Andrews*, No. 12-6923, 2012 WL 5869159, at *2 (D.N.J. Nov. 19, 2012).

13

The operative portions of his Amended Complaint focus on the receipt into that specific account, and distribution from it, of a specific and discrete "$90,321.70" from the Estate, and the specific and discrete "$18,064.34" he claims was due to him. ECF No. 52 at ¶¶ 50-61.[18] Viewed through this lens, it becomes apparent that in order for this Court to grant the relief that the Plaintiff seeks, it would in reality be determining the existence of, and a right to, specific Estate assets which had been under the control of the state probate court, and it would be exercising *post hoc* judicial control over the conduct of the executrix and the Defendant, and then over the disposition of specific Estate assets. *See Three Keys*, 540 F. 3d at 230, n.10. To adjudicate Plaintiff's claims, this Court would inevitably have to involve itself in the determination of the assets in, and management of, that joint bank account in order to determine if the funds allegedly pilfered by the Defendant must be treated as having been "Estate" funds, in the first instance, and the Plaintiff's in the second. Then, in order to limit (after the fact) the discretion that the Defendant would have had to withdraw funds from what was otherwise his account, this Court would have to conclude that the Defendant had become, in essence, a *de facto* fiduciary of the deposited funds, owing Estate-administration duties to the Plaintiff. All of that is exactly the work, and role, of the state probate court, here the Orphan's Court for Elk County, Pennsylvania.[19]

To be sure, this case does not involve the "purest" of *in rem* proceedings whereby the Plaintiff seeks possession of specific, non-fungible, non-monetary assets such as

---

[18] This tends to make his claims look a lot more like ones for *in rem*, as opposed to *in personam*, relief.

[19] According to Defendant at oral argument, the Judge who presided over the Clark estate and the attorney that aided in the probate and administration of the estate have both passed away, and the divorce of Nancy and Russell Luellen has been completed, which included the marital distribution of assets.

instrumentalities of corporate ownership, as was the case in *Three Keys*.[20] Plaintiff's Amended Complaint essentially labels the Defendant as a bully, thief and a trickster who by the use of domination and force overcame the will of the executrix to prevent her from preventing him from accessing funds in an account as to which he otherwise had unfettered control. However, as the *Rothberg* court noted, in considering the application of the probate exception, a court is required to look beyond the "style" of the Complaint. 2013 WL 1314699, at *6. Here, in order for the Plaintiff to assert a colorable claim, he must first establish that he had a right, *ab initio*, to any distribution from the Estate, a distribution not apparent on the face of the decree he himself annexed to his Amended Complaint. Then, this Court would have to rule that there was imposed on the joint account a fiduciary limitation running in favor of the Plaintiff that the Defendant was obligated to abide, one that is inherently and inexorably intertwined with the executrix's duties in her administration of the Estate, and otherwise contrary to the Defendant's power to withdraw funds from his bank account. Once the relief the Plaintiff seeks is examined at any point below its surface, the impending involvement of this Court in the administration of the Estate, and control over the specific Estate assets the Plaintiff references, becomes apparent.

These are the very inquiries and decisions that the probate exception, even post-*Marshall*, contemplates will be, can be, and should be made not by a federal court sitting in diversity, but by the state probate court with jurisdiction over the Estate. Plaintiff has offered up no reason to conclude that that court is without the power to adjudicate his claimed entitlement to the funds he seeks. Pennsylvania law provides him with the ready ability to transfer this case to state court. *See Finta v. Finta*, No. 07-1966, 2008 WL 2246319, at *6 (E.D. Pa. May 30, 2008).

---

[20] Although, as noted above, the focus of the Plaintiff's pleadings on the Defendant's alleged absconding with very specific buckets of Estate funds from the Defendant's own account surely makes it look like one.

Consequently, the Complaint must be dismissed without prejudice for lack of subject matter jurisdiction.[21]

### IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss for lack of subject matter jurisdiction is granted without prejudice to the Plaintiff's ability to refile the action in, or transfer it to, the appropriate Pennsylvania Court of Common Pleas. An appropriate order will issue.

Mark R. Hornak
United States District Judge

Dated: September 10, 2013

cc: All counsel of record
Scott Eric Luellen

---

[21] "If a court then determines that it lacks subject matter jurisdiction, it cannot decide the case on the merits. It has no authority to do so. A federal court can only exercise that power granted to it by Article III of the Constitution and by the statutes enacted pursuant to Article III." *In re Orthopedic "Bone Screw" Prods. Liab. Litig.*, 132 F.3d 152, 155 (3d Cir. 1997) (citing *Bender v. Williamsport*, 475 U.S. 534, 541 (1986)). Therefore, this Court is without the power to adjudicate the balance of grounds stated for Defendant's Motion to Dismiss, or the various pending Motions filed by Plaintiff, ECF Nos. 82, 84, 87 and 91, and they will each be denied without prejudice to their reassertion in state court.